Gary L. SMITH and Sheila
M. Smith, Appellees,

v.

Cathy J. BROWN, Appellant.

No. 92–1886.

Supreme Court of Iowa.

March 23, 1994.

As Corrected March 23, 1994.

Frank R. Fuhr of Klockau, McCarthy, Ellison & Marquis, P.C., Rock Island, IL, for appellant.

Dennis D. Jasper of Stafne, Lewis, Jasper, Alexander & Preacher, Bettendorf, for appellees.

HARRIS, Justice.

Two questions are presented in this appeal involving a lien set up in a dissolution-of-marriage decree. The lien of $13,000 on a family residence ran in favor of the husband-father. It was a factor in the property division; the wife was given the right to reside in the home during the minority of the parties' children, and thereafter, on sale, to receive the proceeds subject to the husband's

lien. The husband promptly sold his interest to plaintiffs and thereafter defaulted in his court-ordered support obligations. The dispute [1] is between the plaintiffs, as the husband's vendees, and the wife, who contends the lien should be subject to her former husband's support obligations. The questions are (1) whether the lien was assignable, and (2) whether it was subject to the husband's support obligations.

The trial court found the lien was assignable, a finding we think was correct. The trial court found the lien was subject only to those obligations arising prior to the assignment. We agree. We conclude that the lien was not subject to obligations arising after the assignment.

The marriage of defendant Cathy Brown and Dennis Brown was dissolved in January of 1980. The dissolution decree awarded Cathy the parties' residence until she remarried, ceased to use it as her principal residence, or the youngest child of the marriage reached eighteen. On the happening of any of these events, the decree called for the sale of the home. From the proceeds of this sale, the decree awarded Dennis $13,000 plus interest from the date of the decree. The decree then awarded Cathy the residence subject to Dennis's interest.

Cathy was awarded custody, subject to Dennis's visitation rights, of the three minor children. Dennis was ordered to pay $37.50 per child per week, the payments "becoming judgments as they accrue." This would be the rule even if the decree had been silent on the point. *In re Marriage of McMorrow,* 342 N.W.2d 73, 75 (Iowa 1983).

Within three months Dennis conveyed his interest in the marital residence by special warranty deed to the plaintiffs, Gary and Sheila Smith, for $5000. The Smiths and Cathy stipulate that the Smiths had not known Dennis prior to the execution of his special warranty deed to them in 1980. They also stipulate that the $5000 consideration paid by the Smiths was "adequate and fair." They agree that during the middle part of

1981 Cathy had actual and personal knowledge of the filing of the special warranty deed.

Subsequent to filing the deed, Dennis became delinquent in his child support obligations. The arrearages of $19,305 at the time of trial exceeded the value of Dennis's interests. At the time of trial the youngest minor child had already attained the age of eighteen.

The Smiths filed this declaratory judgment action seeking clarification of the parties' rights. Dennis was not made a party. Cathy answered and asserted (1) that the lien was not assignable by Dennis, and (2) she was entitled to a setoff against the lien for Dennis's delinquent support payments.

After finding the lien was assignable and that the Smiths were assignees of all Dennis's interest in the residence, the district court declared the interest was subject to setoffs for Dennis's support payments. By way of a motion under Iowa rule of civil procedure 179(b), the Smiths asked the court to order the property sold. This motion was denied; the court directed the Smiths to use ordinary proceedings for enforcing the lien. Cathy appealed and the Smiths cross-appealed. The case was tried in equity; our review is de novo. Iowa R.App.P. 4.

■ I. The trial court was correct in rejecting Cathy's contention that Dennis could not assign his lien interest. In *Broyles v. Iowa Department of Social Services,* 305 N.W.2d 718, 721 (Iowa 1981), we established that future judgments arising from dissolution-of-marriage decrees are assignable. Dennis's lien surely qualifies. When assigned, it was a present interest even though enjoyment was postponed until some future point.

■ II. A more troublesome question is whether the assigned interest was subject to setoff for the delinquent child support. According to the general rule an assignee takes precisely what the assignor had, and assumes

---

1. There were actually two litigations. The first arose on the wife's application to modify the dissolution decree. It was adjudicated adversely to the assignees, but, because they had no notice of the application, it had no effect on their rights. The second proceeding was this declaratory judgment action brought by the assignees.

not only all advantages but is subject to the same defenses. Thus the obligor can assert against the assignee all claims that would have been available against the assignor. *Walters v. Iowa–Des Moines Nat'l Bank,* 295 N.W.2d 430, 433 (Iowa 1980). Cathy relies on this principle.

■ The Smiths recognize the rule, but point to authorities that limit it. In *Walters,* 295 N.W.2d at 433, we quoted from and relied upon 20 Am.Jur.2d *Counterclaim, Recoupment and Setoff* § 87 (1965) and 6A C.J.S. *Assignments* § 99 (1975). These same authorities point out the corollary relied upon by the Smiths. Generally equities and defenses between the assignor and debtor arising after the assignment cannot be interposed against the assignee. 6A C.J.S. *Assignments* § 99, at 757; 20 Am.Jur.2d *Counterclaim, Recoupment and Setoff* § 89, at 307. It was for this reason that in *Walters* we took care to limit the right of setoff to those held "at the time of the assignment or notice thereof." 295 N.W.2d at 433.

■ Cathy's position is greatly weakened by the fact she is dealing with a third party. We have said that, because the rights of third parties may be implicated, "[r]eal estate titles, once fixed, should not be subjected to revision with the subsequent ebb and flow of the fortunes of former parties to the litigation." *Kleinsmith v. Northwest Bank & Trust,* 477 N.W.2d 388, 390 (Iowa 1991) (citing *Marriage of Knott,* 331 N.W.2d 135, 137 (Iowa 1983)).

It is stipulated that the Smiths were unacquainted with Dennis at the time of their purchase of the lien, and that the purchase price was "adequate and fair." The Smiths had a clear right to note that the dissolution decree did not make the lien subject to further support payments and to make their purchase accordingly. The lien was not reduced by any arrearages accumulating after the assignment.

■ III. In their cross-appeal the Smiths request that we not only declare the setoff inapplicable to their lien but also compel the sale of the home or the payment of the cash equivalent. The district court denied them this remedy, leaving the parties to ordinary

proceedings for enforcement of the lien. *See* Iowa Code ch. 626 (1993). The court does have authority, under Iowa rule of civil procedure 261, to grant further consequential relief in an action for declaratory judgment but was not required in this case to do so. It was entirely appropriate, after adjudicating their rights, to leave the parties to proceed by ordinary proceedings.

In summary the trial court was correct in holding the plaintiffs-Smith are assignees of all interests that Dennis L. Brown had in the real estate. The trial court was correct in holding that their claim is subject to all setoffs and counterclaims to which Dennis was subject when the assignment was recorded June 24, 1980. The lien was however not subject to setoffs and counterclaims arising thereafter. The trial court did not err in leaving the Smiths to ordinary enforcement proceedings. Alternatively, Cathy may satisfy the lien by paying an amount equivalent to the $13,000 plus interest consistent with the 1980 divorce decree.

We note that future litigation can be avoided by wording divorce decrees so that the lien is made subject to future unpaid child supports so that any arrearages will be deducted from the amount of the lien. *See In re Marriage of Bulanda,* 451 N.W.2d 15, 18 (Iowa App.1989). Tax costs fifty percent to Cathy and fifty percent to the Smiths.

**AFFIRMED ON BOTH APPEALS.**

All Justices concur except McGIVERIN, C.J., and LAVORATO, J., who dissent.

McGIVERIN, Chief Justice (dissenting).

I dissent. The dissolution decree encompassed the entirety of the property and child support settlement of the financial affairs of Dennis and Cathy. The $13,000 lien given to Dennis on the realty and his child support obligation were necessarily interrelated. Dennis should not be allowed to sell off his lien and divorce that lien from his child support obligation of $19,000.

Although I agree that generally equities and defenses between the assignor of the lien (Dennis) and the debtor of the lien (Cathy) arising after the lien assignment usually can-

not be interposed against the assignee, I believe that this is one of the "certain circumstances" under which "an assignee may be held ... to have impliedly assumed the contractual obligation of the assignor." *Nofziger Communications, Inc. v. Birks,* 757 F.Supp. 80, 85 n. 9 (D.D.C.1991) (quoting *Haarman v. Davis,* 651 S.W.2d 134, 136 (Mo. 1983)).

Under my view, "where the claim against the assignee is related to the transaction out of which the assignment arose and even if the claim accrues *after* notice of the assignment, a defendant may interpose it against the assignee to the extent of the offset." *Ford Motor Credit Co. v. Sofia,* 147 Misc.2d 651, 559 N.Y.S.2d 109, 111–12 (N.Y.City Civ. Ct.1990) (citing *Associates Capital Servs. Corp. v. Fairway Private Cars, Inc.,* 590 F.Supp. 10, 17 (E.D.N.Y.1982); *James Talcott, Inc. v. Winco Sales Corp.,* 14 N.Y.2d 227, 233, 250 N.Y.S.2d 416, 420, 199 N.E.2d 499, 502 (1964)).

I believe that Cathy's claim for delinquent child support against the Smiths as an offset against the $13,000 lien was related to the dissolution decree transaction out of which the $13,000 lien arose. Dennis should not be allowed to sell off the lien to avoid further child support payments and leave Cathy defenseless against the lien. Under these circumstances, I would imply an assignment of Dennis's future child support obligations to the Smiths to the extent of the $13,000 lien. The Special Warranty Deed under which the Smiths took Dennis's lien put them on notice that Cathy had an interest in the property. The Smiths purchased the lien at a considerable discount ($5,000) to account for potential liabilities arising out of Dennis's divorce, among other things.

Despite these facts, the majority concludes that Cathy, and not the Smiths, loses in this case. I cannot accept that result. I therefore respectfully dissent.

LAVORATO, J., joins this dissent.